# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-23-00053-CR
_____

## GREGORY LAMAR HENDERSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-01-00117-CR**

## MEMORANDUM OPINION

Appellant Gregory Lamar Henderson appeals his conviction for deadly conduct by discharge of a firearm. *See* Tex. Penal Code Ann. § 22.05(b)(2). In his sole issue, Henderson complains the trial court erred in denying his Motion to Suppress Evidence Seized Without a Warrant. Henderson argues that the contents of his cell phone should be suppressed because the seizure of his cell phone without

1

a particularly described warrant was unconstitutional. *See* U.S. CONST. amend. IV. For the reasons explained below, we affirm the trial court's judgment.

## PERTINENT BACKGROUND

Henderson filed a Motion to Suppress Evidence Seized Without a Warrant, asking the trial court to suppress all cell phone evidence seized from his vehicle. Henderson argued that the warrant to search his home authorized the police to search for and seize the following property and items:

> []Photographs of the inside and outside of the residence and premises. Any and all firearms, firearm magazines, ammunition, gun carrying cases, gun cleaning kits, receipts for purchases of firearms, and bills of sale for firearms, any indicia of firearm ownership or possession of firearms.[]

Henderson argued the police seized two cell phones without a warrant, exigent circumstances, or an exception to the search warrant requirement in violation of the Fourth Amendment. The record shows that the day after the police executed the first search warrant, the police obtained a second warrant to search a silver LG cell phone and a black BLU cell phone, which were located at the Conroe Police Department.

The trial court conducted a hearing on Henderson's Motion to Suppress. The State explained that the complainant and a witness reported that Henderson was responsible for a shooting and linked to a blue Volkswagen. The State explained that Detective Bret Irvine of the Conroe Police Department and his team executed a search warrant of Henderson's residence, which included any associated vehicles,

2

and Crime Scene Investigator Cassondra Cunningham collected cell phones from the blue Volkswagen based on her belief that they potentially belonged to Henderson and contained evidence of the offense. The State argued that Investigator Cunningham collected the cell phones, despite the first warrant not specifically including cell phones, because she was concerned the evidence would be destroyed if left at the scene. The State explained that after the first warrant was executed, Henderson told Detective Irvine that he was communicating with people the night of the offense, and that admission led police to obtain a second search warrant specific to the cell phones. The police then downloaded and searched the cell phones.

The Defense argued that the items to be seized needed to be particularly outlined, the first search warrant did not include electronics or phones, every seized item not on the list is fruit of the poisonous tree, and there were no exigent circumstances involving the threat of destruction. The trial court admitted the affidavits and search warrants for the residence and cell phones and considered testimony.

Detective Irvine testified he obtained and executed a warrant that gave him probable cause to search Henderson's residence and vehicle, and he explained that based on statements from the victim and a witness, the warrant noted that Henderson drove a blue Volkswagen. When Detective Irvine executed the warrant, he observed a blue Volkswagen outside of Henderson's apartment, and Henderson's wife

3

confirmed it was her car. Detective Irvine testified that Investigator Cunningham searched the car and collected two cell phones that she believed belonged to Henderson. Detective Irvine explained that based on his investigation and review of surveillance footage, he believed the cell phones could have been involved or used in the crime. Detective Irvine explained that two people approached the shooter's car, a red Lexus, immediately before and after the shooting, and it was likely they used cell phones to communicate. After executing the warrant, Detective Irvine interviewed Henderson, who stated that on the night of the offense he received a call informing him the police were at his residence. Detective Irvine testified that Henderson's statement gave him probable cause to believe that the cell phones could have been part of the crime, so he obtained a second search warrant to download the contents of the cell phones. Detective Irvine also testified that the Volkswagen was not involved in the shooting, the first warrant did not include cell phones or electronics, and there was no indication of evidence tampering.

Investigator Cunningham explained that when she helped execute the warrant, she learned that the warrant included a blue Volkswagen linked to Henderson, and she searched the Volkswagen and collected two cell phones to safeguard until she received a warrant authorizing the search of the contents. Investigator Cunningham testified that based on her experience, she believed the cell phones could contain evidence of the offense, including phone calls, text messages, images, and

4

geographical location data. Investigator Cunningham explained that it was important to safeguard the cell phones and obtain a warrant for the contents because it is easy to delete data from a cell phone and deleted data is not immediately recoverable. Investigator Cunningham testified that she could have towed the Volkswagen to the police department to search for the items listed in the warrant, which she agreed did not include electronics or cell phones.

After presenting testimony, the State argued that the probable cause in the first search warrant along with reasonable and articulable facts and circumstances allowed Investigator Cunningham to temporarily seize and maintain control of the cell phones, which she believed were related to the crime, until she obtained a warrant to search the contents. The defense argued the seizure of the cell phones should be suppressed because there were no exigent circumstances to justify the seizure under the first search warrant. The trial court denied Henderson's Motion to Suppress. The trial court stated that the cell phone "in and of itself is irrelevant," except for the "indicia of firearm ownership[,]" and the first search warrant listed a blue Volkswagen and "it seems reasonable to assume that they seized the phone to hold until they got a warrant because it was in the blue Volkswagen."

## ANALYSIS

In his sole issue, Henderson complains the trial court erred in denying his Motion to Suppress the contents of his cell phone because the seizure of his cell

5

phone without a particularly described warrant was unconstitutional. *See* U.S. CONST. amend. IV.

We review the trial court's denial of a motion to suppress under a bifurcated standard of review. *Igboji v. State*, 666 S.W.3d 607, 612 (Tex. Crim. App. 2023); *Dugar v. State*, 629 S.W.3d 494, 497 (Tex. App.—Beaumont 2021, pet ref'd). We review the determination of whether a specific search and seizure was reasonable under a de novo standard, but we give the trial court almost complete deference in determining historical facts that depend on credibility and demeanor. *Igboji*, 666 S.W.3d at 612 (citations omitted); *Gallagher v. State*, Nos. 09-21-00307-CR, 09-21-00308-CR, 09-21-00309-CR, 09-21-00310-CR, 2023 WL 3085768, at *4 (Tex. App.—Beaumont Apr. 26, 2023, no pet.) (mem. op., not designated for publication). When, as here, the trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Igboji*, 666 S.W.3d at 612 (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). Generally, we limit our review to the record of the suppression hearing. *Id.* (citation omitted).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

6

U.S. CONST. amend. IV. "A warrantless search or seizure is *per se* unreasonable under the Fourth Amendment unless it falls within a recognized exception to the warrant requirement." *Igboji*, 666 S.W.3d at 613. The existence of exigent circumstances is one such exception. *Id.*; *Gallagher*, 2023 WL 3085768, at *5. This exception permits law enforcement to handle situations that compel the "need for official action and no time to secure a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013); *Igboji*, 666 S.W.3d at 613.

Once a defendant shows that a warrantless seizure has occurred, the burden shifts to the State to prove an exception to the warrant requirement applies. *Igboji*, 666 S.W.3d at 613. Generally, the State must satisfy a two-step process to validate a warrantless seizure based on exigent circumstances: (1) the existence of probable cause, and (2) an exigency. *See id.* "[P]robable cause exists 'when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality . . . or evidence of a crime will be found.'" *Id.* (quoting *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005)). An exigency requiring an immediate action by law enforcement must exist, and one recognized category of exigent circumstances that justifies a warrantless intrusion by law enforcement is preventing destruction of contraband or evidence. *Id.* at 613-14.

To determine whether exigent circumstances exist, courts look to the totality of the circumstances when the seizure occurred. *Id.* at 613; *Gallagher*, 2023 WL 3085768, at *6. There is no requirement that the record show affirmative conduct on the part of the defendant. *Igboji*, 666 S.W.3d at 614. Rather, for exigent circumstances to justify a warrantless seizure of a cell phone, the record must show that officers reasonably believed the evidence would be imminently destroyed if they waited to obtain a warrant to seize the cell phone. *See id.* at 616-17; *Gallagher*, 2023 WL 3085768, at *6 (upholding warrantless seizure of cell phone where trial court could have reasonably found officer believed evidence of crimes would be found on phone and there was imminent risk evidence would be destroyed); *Rafiq v. State*, 661 S.W.3d 827, 839-40 (Tex. App.—Beaumont 2022, pet. ref'd) (finding exigent circumstances justified the warrantless seizure of cell phone to obtain a search warrant and prevent destruction of evidence relevant to the crime).

Detective Irvine testified that based on his investigation, he believed the cell phones Investigator Cunningham collected from the Volkswagen could have been involved in the crime because it was likely the suspects used cell phones to communicate. Cunningham had already determined that there were two shooters and two vehicles potentially involved: the blue Volkswagen and a red Lexus. Cunningham explained that these facts made it likely that the two parties had used cell phones to communicate. Detective Irvine explained, based on his training and

experience, it is easy to destroy evidence of criminal activity recorded on a cell phone and that is why it is important to safeguard the cell phone while seeking a search warrant. In addition, Irvine explained that Henderson's statement that he received a call informing him the police were at his residence gave him probable cause to believe the cell phones could have been part of the crime. Investigator Cunningham testified that she believed the cell phones could contain evidence of the offense, and that it was important to safeguard them because it was easy to delete the data. Based on the testimony, the trial court could have reasonably believed that there would be evidence on the cell phones relevant to the indictment. *See Igboji*, 666 S.W.3d 613, 616-17; *Gallagher*, 2023 WL 3085768, at *6; *Rafiq*, 661 S.W.3d at 839-42. Accordingly, we conclude the trial court did not abuse its discretion in finding that probable cause existed when Investigator Cunningham seized the cell phones. After examining the totality of the circumstances when the seizure occurred, we also conclude the trial court did not abuse its discretion in finding there was an imminent risk the evidence on the cell phones would be destroyed had the phones not been seized. *See Igboji*, 666 S.W.3d 613, 616-17; *Gallagher*, 2023 WL 3085768, at *6; *Rafiq*, 661 S.W.3d at 839-42.

Having determined that the trial court did not abuse its discretion in finding that there was probable cause and the need to prevent the imminent destruction of evidence on the cell phones, we conclude the trial court did not err in denying

9

Henderson's Motion to Suppress. We overrule Henderson's sole issue and affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on January 2, 2024
Opinion Delivered August 28, 2024
Do Not Publish

Before Johnson, Wright and Chambers, JJ.